IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES, et al. ex rel.<br>THOMAS PROCTOR,<br><br>      Plaintiffs,<br><br>      v.<br><br>SAFEWAY, INC.,<br><br>      Defendant. | No. 11-cv-3406 |

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Relator Thomas Proctor's Motion to Compel (d/e 95) (Motion). For the reasons set forth below, the Motion is ALLOWED in part.

## BACKGROUND

On February 27, 2017, Relator Thomas Proctor served his First Set of Requests for Production of Documents to Defendant (Request) on Defendant Safeway, Inc. (Safeway). Motion, Exhibit A, Request. The Request asks for various Electronically Stored Information including Safeway's PDX pharmacy transaction data (PDX Data), as well as emails and other electronically stored documents.

The Request asked for Electronically Stored Information in the following form:

J. Form of Production for Electronically Stored Information: Unless otherwise agreed to by counsel, electronically stored information ("ESI") shall be produced in its unaltered native form and as it is maintained in the ordinary course of business. If, however, you have created a litigation database to facilitate the production of documents, the ESI shall be produced in multi-page TIFF format (minimum 300 dpi resolution) with searchable text files and native files using "(beginning Bates number).(extension)" for each document as the filename. Such production shall include .opt load files and .dat files that preserve all associated metadata. ESI that is not reviewable with ordinary Microsoft Office software should be produced with instructions and software necessary to review such ESI. Any production of ESI must retain all of the attributes of the original files, including appearance, searchable text, and metadata.
Certain categories of documents shall be produced (or incorporated in a litigation database) in the following formats unless otherwise agreed in writing:

    a. Electronically stored communications, such as e-mails, shall be produced in their native format (.pst files produced by custodian are acceptable).

    b. Unless other agreements are made between the parties, all information extracted from databases, data tables, or data warehouses, such as all types of transaction data (including sales transaction data and claims transaction data), as well as price lists, code lookup tables, and other requested information shall be produced in a set of tab-delimited plain-text ASCII flat files with the first line of each file consisting of a header line indicating the names of the data fields, and subsequent lines containing data. In the event that a tab character occurs within a data field, it should be replaced with the two-character string "\t"; if the two character string "\t" already occurs within a data field, it should be replaced with the three-character string "\\t".

> i. Each data file can be split into multiple sub-files for convenience, as long as each sub-file has its own header line and the header line is identical across all sub-files.
>
> ii. Each data file must be accompanied by a log file indicating the commands used to prepare the output, and/or any interpreted or executed computer code used to generate the output. Logs and codes should be annotated with the product vendor or language version (e.g., "Oracle PL/SQL 12c (12.1.0.2.0)").
>
> iii. Once generated, all data files should be losslessly compressed into a commonly available format which supports password protection (e.g., 7zip, RAR, ZIP) and encrypted using a password, which shall be provided under separate cover.
>
> c. All documents that cannot be converted into TIFF files in a reasonably usable form and without omitting user-created content (for example audio, video, spreadsheets, Microsoft documents in native format (Native Files) and image files such as TIFF and pdf (collectively Image Files).

Request, Instructions ¶ J (Request ESI Instructions).

The parties negotiated over the production of the requested materials. Safeway has produced some files. Safeway produced 260,640 Bates numbered documents. The Motion does not concern these files. Memorandum in Support of Motion to Compel (d/e 96) (Proctor Memorandum), at 2 n.3.

Safeway also produced approximately 575,000 documents in Native Format (Issue Files). Native format is the format in which the documents were created. Some of the files produced were a mass of

incomprehensible special characters and other symbols.  See Proctor Memorandum, at 5.  Safeway used a key word search to collect Issue Files, but did not otherwise review the Issue Files to determine the documents produced by the key word search were responsive to Proctor's Request.

Safeway has not produced the PDX Data.

Proctor asks the Court for the following relief: (1) order Safeway to review the Issue Files (and any other subsequently produced documents) to identify the non-privileged responsive documents; (2) order Safeway to produce the responsive documents from the Issue Files in Bates numbered Tagged Image File Format (TIFF) or Adobe Portable Document (PDF) format (collectively referred to as Image Files); and (3) order Safeway to produce the PDX Data immediately.

Safeway responds that Proctor's request is overly burdensome, cost prohibitive, and cannot be accomplished within the timeframe of the discovery schedule.  Safeway says that it has resolved the problem with the documents in the Issue Files that contained masses of incomprehensible symbols, but has not explained how or when.  Defendant Safeway, Inc.'s Opposition to Relator's Motion to Compel (d/e 100) (Safeway Response), at 6-7.  Safeway also states that it is now reviewing

the Issue Files to identify responsive documents through use of a technology assisted review (TAR) process. Safeway states that it reviewed all documents produced after it produced the Issue Files with the TAR process to identify responsive documents. Safeway also stated during the parties negotiations that it was willing to place Bates Numbers on the documents produced. Safeway Response, at 5-6, 7.

Safeway, however, states that creating Image Files is overly burdensome and cost prohibitive. Safeway asks that if the Court orders it to produce Image Files of the Issue Files, that the Court order Proctor to pay a significant part of the costs of producing any Image File copies of the Issue Files.

Finally, Safeway denies that it unreasonably delayed producing the PDX Data. Safeway states that it will produce the PDX Data by March 28, 2018. Safeway Response, at 9.

ANALYSIS

Safeway must produce responsive unprivileged documents within its custody and control that are relevant for purposes of discovery. Fed. R. Civ. P. 34(a). With respect to Electronically Stored Information, Safeway must produce documents as they are kept in the usual course of business or must organize and label the documents to correspond to the categories

in the request.  Safeway must produce the documents in the form in which the documents are ordinarily maintained or in a reasonably useable form.  Proctor's Request ESI Instructions stated that Safeway could produce the documents as Native Files.  The Request ESI Instructions directed Safeway to produce Image Files if it created a litigation database.  Safeway, however, was not required to produce documents in more than one form.  Fed. R. Civ. P. 34(b)(2)(E).  The Court, therefore, will not order Safeway to produce the Issue Files as Image Files.  Safeway, however, must produce documents in a useable format if it elects to produce Native Files.  Safeway is directed to follow the following portion of the Request ESI Instructions in its production of responsive documents:

> ESI shall be produced in its unaltered native form and as it is maintained in the ordinary course of business.  Such production shall include .opt load files and .dat files that preserve all associated metadata. ESI that is not reviewable with ordinary Microsoft Office software should be produced with instructions and software necessary to review such ESI. Any production of ESI must retain all of the attributes of the original files, including appearance, searchable text, and metadata.

In addition, Safeway must also place a unique Bates number on each Issue File produced.  The parties and the Court must have a way to identify each document and verify its authenticity.  A Bates number is an appropriate way to meet those requirements.  Safeway stated during the parties'

negotiations that it would number Native Files with a Bates number. It must do so.

Safeway must review the Issue Files to identify the responsive documents. A party must make reasonable inquiry and certify that discovery is complete and responsive. Fed. R. Civ. P. 26(g)(1). Under the facts of this case, Safeway's key number search alone was not a reasonable inquiry under Rule 26(g). Safeway states that it is now reviewing the Issue Files through its TAR system. The Court hereby orders Safeway to conduct and complete its TAR review process to identify responsive files by Friday, March 16, 2018. The Court orders Safeway to produce responsive Issue Files in the manner called for in this Opinion, including a unique Bates number on each document, by Friday, March 23, 2018.

Safeway must also produce the PDX Data. Safeway says that it will produce these documents by March 28, 2018. Proctor wants the files now. Safeway has had more than a year to respond to this request. The Court orders Safeway to produce the PDX Data by Friday, March 16, 2018.

The Court denies Safeway's request for an order imposing its documents production costs on Proctor. The Court did not order Safeway to produce Image Files so the primary basis for the request is moot.

THEREFORE, IT IS ORDERED that Relator Thomas Proctor's Motion to Compel (d/e 95) is ALLOWED in part.

ENTER: March 8, 2018

*s/ Tom Schanzle-Haskins*
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE