IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. THOMAS PROCTOR, et al., | ) ) ) ) |
| Relator, | ) ) |
| v. | ) No. 11-cv-3406 ) |
| SAFEWAY, INC., | ) ) |
| Defendant. | ) |

## OPINION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendant Safeway Inc.'s (Safeway) Motion to Compel Government Agency to Allow Former Government Employee to Testify in Accordance with Deposition Subpoena (d/e 135-1) (Motion to Compel), and Safeway's Renewed Motion for Leave to Extend the Deadline for Deposing Former Government Employee in Light of New Circumstances (d/e 134) (Renewed Motion for Leave). For the reasons set forth below, the Motion to Compel is DENIED and the Renewed Motion for Leave is DENIED AS MOOT.

## BACKGROUND

The Relator Thomas Proctor brings this qui tam action for violation of the False Claims Act, 31 U.S.C. § 3729 et seq., and supplemental claims

for violation of state false claims statutes. Amended Complaint (d/e 50). Safeway operates pharmacies. Proctor alleges that the Defendant illegally overcharged the federal and state government programs. The alleged overcharging involved, among other things, fraudulently overstating Safeway's Usual & Customary prices for prescription medications. See Amended Complaint, ¶¶ 90-140.

Proctor filed the action on November 7, 2011. The United States declined to intervene August 21, 2015. Notice of Election (d/e 23). The matter was unsealed, and Safeway received notice of the lawsuit on December 9, 2015. Safeway waived service on December 9, 2015. Waiver of Service or Summons (d/e 28). Discovery commenced in February 2017. See Opinion entered July 14, 2016 (d/e 67) (staying discovery until resolution of pending Motion to Dismiss); Scheduling Order entered February 2, 2017 (d/e 76).

On November 16, 2018, Safeway issued a subpoena (Subpoena) to Cynthia Tudor, Ph.D., to appear and be deposed on November 28, 2018. Safeway issued the Subpoena more than 17 months after discovery commenced. Discovery was scheduled to close 14 days later on November 30, 2018. See Text Order entered October 4, 2018.

Dr. Tudor formerly was the Deputy Center Director of the Centers for Medicare and Medicaid Services (CMS) and former Director of the Medicare Drug Benefit and C&D Data Group. This Court previously noted that Dr. Tudor authored a memorandum relevant to this case for discovery purposes at least:

> Dr. Tudor authored a memorandum dated October 11, 2006, which provided guidance regarding situations in which covered individuals can purchase prescriptions drugs from pharmacies at cash discount prices (Lower Cash Price Policy Memorandum). Proctor quoted from the Lower Cash Price Policy Memorandum in paragraph 102 of the First Amended Complaint (d/e 50). The Lower Cash Price Policy, set forth in the Lower Cash Price Policy Memorandum, is incorporated into Chapter 14, § 50.42 of the Centers for Medicare and Medicaid Services' 2006 Medicare Prescription Drug Benefit Manual. <u>See Relator's Response to Defendant's Motion for Leave to Schedule Deposition of Former Government Representative Within Two Weeks of Discovery Cutoff [d/e121] (d/e 124) (Relator's Response)</u>, at 3.

<u>Opinion entered December 3, 2018 (d/e 126) (Opinion 126)</u>, at 3.

On November 16, 2018, Safeway's counsel also sent a letter to Seema Verma, Acting Administrator for CMS, asking CMS to authorize Dr. Tudor to testify. Federal regulations require agency authorization before an employee or former employee of CMS may testify concerning information acquired in the course of performing official duties. 45 C.F.R. §§ 2.1- 2.6

(Touhy Regulations).[1]  The regulations apply to all employees of the Department of Health and Humans Services (Department) other than the employees of the Food and Drug Administration.  445 C.F.R. § 2.1.  CMS could only allow Safeway's request for Dr. Tudor's testimony if CMS determined, "after consultation with the Office of General Counsel, that compliance with the request would promote the objectives of the Department."  45 C.F.R. § 2.3.  CMS has previously authorized another former CMS employee, Leslie Norwalk, to testify in this case.  November 16 Letter, Attachment B, Letter from Demetrios Kouzoukas, Deputy Administrator and Director of CMS to Attorney Robinson dated October 2, 2018.

Safeway requested authority for Dr. Tudor to testify on the following topics (Deposition Topics):

> Specifically, Ms. Tudor is expected to testify on the following specific topics:
>
> 1. Memorandum, dated October 11, 2006, from Cynthia Tudor to All Part D Sponsors, regarding the HPMS Q & A- Lower Cash Price Policy (See Attachment A); and
>
> 2. Medicare Part D's "Lower Cash Price Policy," including but not limited to CMS's objectives for the Policy (see Attachment A; see also Medicare

---

[1] The name Touhy comes from the Supreme Court decision that upheld this type of regulations, United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951).

Prescription Drug Benefit Manual, Ch. 14, 50.4.2 –
Beneficiary Cash Purchases (Rev. 12, 03/19/2010)
and (Rev. 17, 08/23/2010)).

Safeway Inc.'s Supplemental Memorandum in Support of Motion to Compel Government Agency to Allow Former Government Employee to Testify in Accordance with Deposition Subpoena (d/e 142) (Safeway Memorandum), Exhibit A, Letter dated November 16, 2018, from attorney Frederick Robinson to Seema Verma (November 16 Letter), at 1.  Safeway noted that CMS previously authorized Norwalk to testify as an expert in this case. Safeway explained that it sought Dr. Tudor's testimony to resolve a dispute between Norwalk's opinions and those of the Relator's expert:

> Please note that CMS has previously approved a Touhy request in this matter, thus recognizing the importance of this type of agency testimony, with respect to the expert testimony of Leslie Norwalk, one of Defendant's experts. Because Ms. Norwalk did not author the "Lower Cash Price Policy" memorandum and Relator's counsel has a contrary interpretation of the policy, Ms. Tudor's testimony as to the policy she authored is needed to clarify a key piece of evidence in this matter.

November 16 Letter, at 1.  Safeway stated further:

> Relator's expert, Dr. Kenneth Scafermeyer, provided an opinion regarding CMS's interpretation of the Lower Cash Price Policy in his expert report. Ms. Leslie Norwalk, former Acting Administrator of CMS and Defendant's expert witness in the Proctor case, has opined that Relator's interpretation of the Lower Cash Price Policy as applicable to Defendant's discount pharmacy programs is incorrect.  Ms. Tudor, as the author of the memo and an individual with firsthand knowledge regarding

> CMS's reasoning for developing the policy, is in a unique position to provide specific, limited fact witness testimony regarding the interpretation and application of CMS's Lower Cash Price Policy, and such testimony is directly relevant to Relator's claims in the litigation.

Id. at 3. Safeway stated that Dr. Tudor's testimony would be "likely to include Ms. Tudor's understanding of CMS's intent and objectives that were driving the policy and the resulting Memorandum," and the "reasons for developing this policy, changes to the Policy over time, and explain how this policy functions in practice, particularly with respect to prescription drug discount programs." Id.

Safeway further stated that Dr. Tudor had special experience and expertise that allowed her to provide evidence that Safeway could not get elsewhere:

> Ms. Tudor is uniquely suited to discuss authoritatively and comprehensively the [Deposition Topics]. Ms. Tudor worked at CMS for almost 25 years, during which time she served as Deputy Center Director of CMS and as the Director for the Medicare Drug Benefit and C&D Data Group, among others. During her tenure in these high-ranking positions within CMS, Ms. Tudor gained a deep familiarity with the statutes, regulations, and CMS guidance governing Medicare Part D, including the Lower Cash Price Policy for Medicare Part D. With the experience and expertise noted above, Ms. Tudor is in a unique position to accurately and comprehensively educate the finder of fact in the Proctor action regarding the Lower Cash Price Policy and 2006 memorandum regarding the policy, which she authored. These issues are complicated and outside the scope of knowledge of most juries and judges.

Id. at 3.

Safeway stated that the testimony was in the interest of the Department to present complete and accurate testimony about the Lower Cash Price Policy in this action. Safeway stated further, that, "[T]he United States government, more broadly, has an interest in this lawsuit, and full disclosure of decision-making information, would promote the government's objectives." Id. at 4.

Proctor moved to quash the Subpoena and Safeway moved to extend the discovery deadline to secure permission from CMS to depose Dr. Tudor. The Court denied the request to quash the Subpoena and gave Safeway until December 14, 2018 to depose Dr. Tudor. Opinion 126, at 11.

On December 7, 2018, CMS Deputy Director Kouzoukas denied Safeway's request to authorize Dr. Tudor to testify pursuant to the Subpoena. Kouzoukas recited the applicable Touhy regulations and caselaw which established that former CMS employees may not testify on matters learned while performing official duties unless CMS determines that the requested testimony would promote the objectives of the Department. Kouzoukas then explained the basis of the denial of Safeway's request:

> CMS not been provided a compelling argument that would support allowing CMS to authorize this testimony, and permitting Dr. Tudor's testimony would not promote the objectives of the Department. First, based on conversations with CMS employees who worked most closely with Dr. Tudor, she may lack personal knowledge about your proposed topics. Second, the specific topics about which you seek Dr. Tudor's testimony seem calculated to elicit Dr. Tudor's opinions as opposed to her personal knowledge. Finally, the proposed topics risk eliciting testimony that would be protected by the deliberative process privilege and/or attorney-client privilege.

<u>Safeway Memorandum</u>, Exhibit C, <u>Letter dated December 7, 2018, from Deputy Director Kouzoukas to Attorney Robinson (December 7 Letter)</u>.

On December 14, 2018, Safeway filed the Motion to Compel in the United States District Court for the District of Maryland because Dr. Tudor resided in that District and filed in this Court a Motion for Leave to extend the time to depose Dr. Tudor.  On January 2, 2019, this Court denied Safeway's request to extend the time further to depose Dr. Tudor.  <u>Text Order entered January 2, 2019</u>.  On January 3, 2019, the District Court for the Eastern District of Maryland transferred the Motion to Compel to this Court.  <u>District of Maryland Docket Sheet (d/e 135)</u>, at 2, <u>Order entered January 3, 2019 (District of Maryland d/e 8)</u>.  On January 4, 2019, Safeway filed the Renewed Motion for Leave to extend the time to depose Dr. Tudor.  The parties completed briefing the Motion to Compel on February 25, 2019 when the Court granted Safeway leave to file a reply.  <u>Text Order entered</u>

February 25, 2019; Safeway Inc.'s Reply in Support of Motion to Compel Government Agency to Allow Former Government Employee to Testify in Accordance with Deposition Subpoena (d/e 146).

ANALYSIS

Safeway seeks judicial review of CMS's decision not to authorize Dr. Tudor to testify pursuant to the Subpoena. Courts have allowed parties to use a motion to compel as a means of seeking judicial review of such decisions. See Estate of Belbachir ex rel Belbachir v. United States, 2010 WL 3239444, at *2 (N.D. Ill. August 13, 2010); Barnett v. Illinois State Bd. of Illinois, 2002 WL 1560013, at *1 (N.D. Ill. July 2, 2002).

The Court reviews the decision under the Administrative Procedures Act (APA), 5 U.S.C. § 701 et seq. Edwards v. United States Department of Justice, 43 F.3d 312, 316-17 (7th Cir. 1994). The APA authorizes this Court to set aside CMS's decision to not allow Dr. Tudor to testify if the decision is arbitrary and capricious. 5 U.S.C. § 706(2)(A). The Supreme Court has discussed at length the scope of review under this standard:

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. In reviewing that explanation, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of

judgment. Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.  The reviewing court should not attempt itself to make up for such deficiencies: we may not supply a reasoned basis for the agency's action that the agency itself has not given.  We will, however, uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (internal citations and quotations omitted).

In this case, CMS's explanation reasonably showed a rational connection between the facts and choice made.  CMA had to determine whether allowing Dr. Tudor to testify on the Deposition Topics would promote the objectives of the Department.  45 C.F.R. § 2.3.  CMS determined that letting Dr. Tudor testify about the Deposition Topics would not promote the objectives of the Department for three reasons:  (1) CMS representatives talked to employees who worked most closely with Dr. Tudor and determined that she may lack personal knowledge about the topics on which Safeway wanted her to testify; (2) the Deposition Topics seemed calculated to elicit opinions rather than facts based on personal knowledge; and (3) testimony on the Deposition Topics posed a risk of

disclosure of information protected by the deliberative process privilege or the attorney-client privilege.

The extent of Dr. Tudor's knowledge about the Lower Cash Price Policy and the Lower Cash Policy Memorandum would be relevant to determining whether she could provide testimony that would promote the objectives of the Department. Employees who worked closely with Dr. Tudor were likely to know the extent of her personal knowledge about the Lower Cash Price Policy and the circumstances of the drafting of the Lower Cash Price Policy Memorandum. Upon learning from these employees that Dr. Tudor had limited knowledge on the Deposition Topics, CMS could reasonably conclude that Dr. Tudor's proposed testimony would not promote the objectives of the Department.

CMS also reasonably determined that the Deposition Topics posed the risk that Dr. Tudor would provide opinions in her deposition. Safeway specifically included in the Deposition Topics, testimony about "CMS's objectives for the" Lower Cash Price Policy. November 16 Letter, at 1. Safeway further stated it wanted to elicit testimony from Dr. Tudor to resolve the conflicting opinions of experts Norwalk and Scafermeyer. November 16 Letter, at 3. Safeway said that it wanted Dr. Tudor's testimony because she had the expertise to "educate the finder of fact" on

complicated issues in this case that were "outside the scope of knowledge of most juries and judges." Id.  Safeway's description of Dr. Tudor's proposed testimony closely tracked Rule of Evidence 702(a) the purpose of expert testimony, "[T]he expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).  CMS could reasonably conclude that Safeway would elicit expert testimony from Dr. Tudor to educate the Court, and that such testimony would likely result in her rendering opinions on matters of interest to CMS, including CMS goals and policies underlying the Lower Cash Price Policy.  CMS could reasonably conclude that allowing a former employee to opine on such matters would not promote the objectives of the Department.

Lastly, CMS also reasonably determined that the testimony would create a risk that Dr. Tudor would disclose privileged information, and that creating such a risk would not promote the objectives of the Department. The deliberative process privilege protects communications within a governmental agency that were part of such agency's decision-making process. United States v. Zingsheim, 384 F.3d 867, 872 (7th Cir. 2004); United States v. Farley, 11 F.3d 1385, 1389 (7th Cir. 1993).  The attorney-client privilege protects confidential communications between a client and

his attorney that constitute legal advice or tend to reveal the substance of a client's confidence. See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 529 F.3d 371, 388 (7th Cir. 2008); United States v. Evans, 113 F.3d 1457, 1461 (7th Cir. 1997). Safeway stated that it wanted Dr. Tudor to testify about the formulation of the Lower Cash Price Policy and the preparation of the Lower Cash Price Policy Memorandum. November 16 Letter, at 3. Safeway further stated that her testimony would provide "full disclosure of decision-making information," presumably full disclosure of CMS's decision-making. Id., at 4. CMS could reasonably conclude that disclosure of decision-making information concerning the development and implementation of the Lower Cash Price Policy could put at risk the disclosure of confidential information protected by these two privileges.

For all these reasons, the decision by CMS that the proposed testimony did not promote the objectives of the Department are rational and are not arbitrary or capricious.

Safeway argues that CMS is wrong about the extent of Dr. Tudor's knowledge of the Deposition Topics. Safeway presents evidence, including a declaration of one of its attorneys to support this argument. Safeway Memorandum, at 8-9, and Exhibit H, Declaration of Selina Coleman. In conducting judicial review, this Court does not substitute its judgment for

CMS.  This Court only determines whether CMS provided a reasonable basis for its decision.  The scope of Dr. Tudor's familiarity with the Deposition Topics was a valid consideration when deciding whether her proposed testimony would promote the objectives of the Department.  Relying on the opinions of fellow employees was reasonable.

Safeway noted that this Court found that Dr. Tudor had personal knowledge of the Deposition Topics.  Opinion 126, at 7.  This Court, however, did not address the level of her knowledge or whether her knowledge of these topics would promote the objectives of the Department.  CMS used a reasonable process of inquiring of fellow employees to ascertain Dr. Tudor's knowledge of the Deposition Topics.  CMS's reliance on such information was not arbitrary or capricious.

Safeway also argues that CMS's decision was arbitrary and capricious because this Court's Opinion 126 already rejected all of CMS's reasons for not authorizing Dr. Tudor's testimony.  Safeway is mistaken.  In Opinion 126, this Court decided the Relator's motion to quash the Subpoena and Safeway's motion to extend discovery schedule to allow Dr. Tudor's deposition.  In doing so, the Court applied Federal Rules of Civil Procedure 16, 26, and 45.  Rules 16, 26, and 45 required the Court to balance the principles of liberally allowing discovery of information that is

proportional to the needs of the case, the burden of the discovery process on the deponent and the parties, and the impact of extending the discovery schedule on the parties and the public's interest in prompt resolution of cases. See Opinion 126, at 6-10; Fed. R. Civ. P. 16(a), 26(b)(1), 45(d). This Court nowhere considered whether Dr. Tudor's testimony promoted the objectives of the Department. The Court, further, specifically acknowledged that CMS might decide not to allow Dr. Tudor to testify. Opinion 126, at 9. CMS did so. Opinion 126 does not conflict with CMS's determination.

Safeway argues that the Court should reverse CMS's decision because Dr. Tudor's testimony is important to its case. Safeway relies on the Supreme Court's decision in Universal Health Services v. United States ex rel. Escobar, __ U.S. __, 136 S.Ct. 1989 (2016). The Universal Health Services case does not address judicial review under the APA. The case is not relevant to the issue before the Court. The Department's Touhy regulations required CMS to decide whether the requested testimony promoted the objectives of the Department. 45 C.F.R. § 2.3. CMS had to follow that regulation. CMS did so. CMS denied the request and explained the basis of that decision. CMS's explanation showed that the decision was "rationally connected to the facts presented." Motor Vehicle Mfrs.

Ass'n of U.S., Inc., 463 U.S. at 43.  The decision was not arbitrary or capricious.  The Universal Health Services case does not apply.

Safeway finally argues that CMS must let Dr. Tudor testify because the United States stands to benefit if the Relator prevails in this underlying case.  Safeway argues that the United States is a real party interest in this case, and so, cannot properly withhold a key witness.  The Court again disagrees.  CMS had to follow the Department's Touhy regulation.  That regulation required CMS to decide, in consultation with the Department's Office of General Counsel, whether complying with the request would promote the objectives of the Department.  45 C.F.R. § 2.3.  CMS did so and gave an explanation that showed a rational connection of the decision to the facts.  CMS was not authorized to consider whether the United States generally had some obligation to let Dr. Tudor testify because of some equitable sense of fairness.  Judicial review standards under the APA similarly do not allow this Court to consider this "fairness" argument when reviewing the CMS decision.

Because the Court upholds CMS's decision not to allow Dr. Tudor to testify, Safeway's request for additional time to take her deposition is moot.

THEREFORE,  IT IS ORDERED that Defendant's Motion to Compel Government Agency to Allow Former Government Employee to Testify in

Accordance with Deposition Subpoena (d/e 135-1) is DENIED, and Defendant's Renewed Motion for Leave to Extend the Deadline for Deposing Former Government Employee in Light of New Circumstances (d/e 134) is DENIED as moot.

ENTER: March 5, 2019

s/ *Tom Schanzle-Haskins*
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE